IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Harvey S. Daniel, | ) | C/A No.: 3:12-2981-CMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| South Carolina Department of Health and Environmental Control, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this employment discrimination case, Harvey S. Daniel ("Plaintiff") is suing his employer, South Carolina Department of Health and Environmental Control ("DHEC"), alleging claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII").

This matter comes before the court on DHEC's motion for summary judgment filed on September 30, 2013. [Entry #26]. The motion having been fully briefed [Entries #29, #30], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant DHEC's motion for summary judgment.

I.    Factual and Procedural Background

DHEC's Bureau of Water includes the Division of Water Quality, which is led by Division Director Heather Preston, who is Caucasian.  [Entry #26-2 at 4].  In her capacity as Division Director, she supervises three sections: (1) the 303(d), TMDL, and Non-Point Source section, (2) the Watersheds and Standard section, which is supervised by Anne Marie Johnson, and (3) the 401 Certification and Wetlands section, which is supervised by Chuck Hightower.  *Id.* at 3.

Plaintiff, who is African American, began his employment at DHEC in 1989. [Entry #29-2 at 4].  He earned a Bachelor of Science degree in biology from the University of South Carolina in 1978 and a Master's of Science in Public Health in the field of Environmental Health Sciences in 1984.  [Entry #29-2 at 1–2].  Since July 1993, Plaintiff has been employed in the Bureau of Water as an Environmental Health Manager.  *Id.* at 3.  In September 2003, Plaintiff joined the 401 Certification and Wetlands section, where he served as a project manager.  *Id.* at 2–3.  In September 2010, he transferred to the 303(d), TMDL, and Non-Point Source section.  *Id.* at 2.

Preston has supervised Plaintiff since 2006.  [Entry #26-2 at 4].  Plaintiff testified that Preston has been dismissive of his contributions and abilities.  [Entry #26-3 at 3].  He stated that she also talked to him like he was a child and may have mentioned that treatment to Preston's supervisor, John Litton.  [Entry #29-1 at 30–31; Entry #26-6 at 3]. Plaintiff said that she spoke to him in an angry manner on two occasions, once in 2010 and once in 2011.  [Entry #26-3 at 5–8].  He admitted that he did not know if Preston

ever displayed anger to any other subordinate. *Id.* at 9. Also while working under Preston's supervision, Plaintiff, on three separate occasions in 2010, challenged Preston for allegedly engaging in unethical practices related to her position at DHEC. [Entry #26-6 at 3–4].

In September 2010, Preston required Plaintiff to make a lateral transfer to the 303(d), TMDL, and Non-Point Source section, a transfer that Plaintiff did not wish to make. [Entry #29-1 at 37]. Plaintiff claims that he had "an exchange" with Preston about transferring projects when he was transferred to the 303(d), TMDL, and Non-Point Source section. [Entry #26-3 at 10, 29]. Also around this time, Plaintiff alleges Preston made a false representation to Litton that Plaintiff's work product times were not good, though Plaintiff contends that his times were as good as or better than most of the other section members. [Entry #29-1 at 35]. Plaintiff contends that during his employment with DHEC, he was overlooked for promotional opportunities several times. [Entry #29-1 at 12].[1]

Plaintiff testified that Preston did not call him any racially-derogatory names. [Entry #26-3 at 4]. Preston testified that she believes she is on "cordial terms" with Plaintiff and that they "get along just fine." [Entry #26-2 at 12]. She also testified that Plaintiff generally "did very meticulous work and very good work" while employed in

---

[1] While Plaintiff testified at his deposition that he applied for other positions throughout his career that he did not receive, it is undisputed that the only position mentioned in his Charge of Discrimination is the Program Manager I position. [Entry #26-3 at 19; Entry #26-5 at 2].

3

her division. *Id.* at 5. She also felt no animus toward Plaintiff and believed that she had a good working relationship with him. *Id.* at 11.

**Plaintiff's Application for Promotion in 2011**

In May 2011, DHEC posted a vacancy notice for a Program Manager I supervisor position for the 303(d), TMDL, and Non-Point Source section. [Entry #29-1 at 2]. Plaintiff applied for the position by submitting an application package including a job application, his curriculum vitae, and several letters of recommendation. [Entry #26-6 at 5].

Prior to conducting interviews for the position, Preston coordinated with Tracy Huston, a DHEC human resources director who was primarily responsible for personnel matters for the Bureau of Water. [Entry #26-2 at 6–7]. Huston is an African-American female. [Entry #26-7 at 6]. Preston asked Huston to review the list of questions that the interview panel would ask the candidates, and Huston revised many of the questions. [Entry #26-2 at 8; Entry #26-7 at 4]. Preston was primarily responsible for pulling together the interview panel. [Entry #26-4 at 3; Entry #26-2 at 6]. As was routine, Preston invited the two other section supervisors in the Division of Water Quality—Anne Marie Johnson and Chuck Hightower—to serve on a three-person panel to conduct initial interviews. [Entry #26-2 at 3, 7].

Once Huston finalized the interview questions, Preston shared them with Johnson and Hightower. [Entry #26-2 at 9; Entry #26-8 at 3]. According to Hightower, he used

4

the questions to determine "how the person would handle certain scenarios or situations." [Entry #26-9 at 3].

Plaintiff stated that he was interviewed on June 15, 2011, and that his interview lasted approximately one hour. [Entry #26-6 at 5–6]. He further stated that he took notes during the interview because he "was reasonably assured that Heather Preston was not amenable to awarding [him] the position." [Entry #26-6 at 6]. The panel interviewed a total of twelve people. [Entry #26-11 at 2]. Following the initial interviews, Preston and the other panel members individually and independently graded the answers of the applicants. [Entry #26-2 at 9–10; Entry #26-8 at 4; Entry #26-9 at 4]. Hightower testified that he did not review the performance evaluations, personnel records, or letters of recommendation of the applicants, but did review each applicant's application. [Entry #29-8 at 2–3]. He stated that the selection of the top candidates was based on their job applications, the face-to-face interview, and what the panel personally knew about the candidates. [Entry #29-8 at 2–3]. Hightower also testified that he did not recall receiving any instructions prior to the interviews other than being given the score sheets. [Entry #29-8 at 1].

Overall, Plaintiff ranked seventh among the twelve candidates. [Entry #26-3 at 43]. Preston scored him eighth, Johnson scored him tenth, and Hightower scored him sixth among the candidates. [Entry #26-11 at 2]. Wade Cantrell, Alexander Butler, and Thomas Flynn were the top three candidates after the first interview. [Entry #26-11 at 2]. These three candidates, all of whom are Caucasian, were invited to a second interview by

Preston and Litton.  [Entry #26-6 at 6; Entry #26-4 at 7; Entry #29-11 at 1; Entry #29-23 at 1–2].  Ultimately, Litton and Preston selected Cantrell as the new section manager for the 303(d), TMDL, and Non-Point Source section.  [Entry #29-23 at 1, 4].

**Plaintiff's Complaints about the Promotion**

On or about July 21, 2011, Preston told Plaintiff that he had not been selected for the position.  [Entry #26-3 at 45].  Plaintiff immediately sent Preston a "standing text message" stating that he intended to contest the hiring decision with the Equal Employment Opportunity ("EEO") office.  *Id.* at 48–49.  Plaintiff testified that he had a standing text message on his cellphone because he was "relatively sure" that Preston would not select him for the position.  *Id.*  He subsequently sent Preston an email stating that the position could not be filled until his EEO complaint was resolved.  [Entry #36-16 at 2].  While Plaintiff has stated that Quentin Chavis, DHEC's EEO officer, gave him this information [Entry #26-3 at 47], Chavis disputes that contention [Entry #26-17 at 2].

Plaintiff testified that he believed that Preston did not want him in the position, because "of who I was, because of her resistance to me or her perhaps thinking that I was—shouldn't challenge her."  [Entry #26-3 at 28].  In a letter to the South Carolina Human Affairs Commission ("SCHAC") on January 30, 2012, Plaintiff explained that he thought Preston might deny him the position "in retaliation for my questioning her illegal work practices at the SCDHEC," which he described as follows:

- In March 2010, Preston directed him to ignore an application for a water quality certification for a construction project on the North Saluda River in Greenville County, South Carolina.

- In September 2010, Preston directed Plaintiff to turn over an application from another construction project on the North Saluda River in Greenville County, South Carolina, to another employee.

- In October 2010, Plaintiff alleges that Preston "inappropriately interrupted" the issuance of a construction permit for a site in Lake Keowee, Oconee County, South Carolina.

[Entry #26-6 at 2–4]. Based on this alleged opposition to Preston's alleged "illegal" work practices, Plaintiff further alleged:

> Therefore, it is my strong belief that Ms. Preston denied me the position of Program Manager I in the 303(d), TMDL, and Nonpoint Source Section in retaliation for my questioning her illegal work practices, particularly since she knew that I would be in a stronger position to question such practices had I been awarded the position.

*Id.* at 4.

Plaintiff testified that he also voiced concerns to Chavis about the hiring process. [Entry #26-3 at 39]. Plaintiff requested that the interview panel sit down with him to go over his score sheet and those of the top three applicants to "determine whether or not they were fairly scored." *Id.* at 40–41. Plaintiff testified that he wanted to know whether the scores were giving according to the criteria on the score sheets and whether the candidates were consistently scored. *Id.* at 41.

**Plaintiff's Supervisory Warning**

On Monday, July 25, 2011, Preston gathered the employees of the 303(d), TMDL, and Nonpoint Source section to announce the name of DHEC's selection of their new section leader, Wade Cantrell. [Entry #26-18 at 2]. In addition to Preston, the meeting attendees were Anne-Marie Altman, Matthew Carswell, Meredith Murphy, Nick Lynn,

7

Twanda Wilson, and Plaintiff.  [Entry #26-2 at 13–14].   Plaintiff testified that after Preston finished speaking, he informed the group that he had applied for the position, that his work had been stellar, and that he intended to contest the decision.  [Entry #26-3 at 51–52.  According to Preston, Plaintiff interrupted her to make his statement.  [Entry #26-2 at 14–15].  Plaintiff contends that after his announcement, Preston stated that she hoped Plaintiff would not take the decision out on Cantrell.  [Entry #26-3 at 52].  Plaintiff found this statement offensive.  *Id.*  Plaintiff recalls that one of the other staff members at the meeting asked whether she needed to "stay to hear this."   [Entry #26-3 at 54].  Plaintiff stated that he recommended that she stay so that if the investigation concluded in his favor, the section members would not think that he was trying to get a position that he did not deserve.  *Id.*

According to Preston, she was astonished by Plaintiff's blatant disruption, characterized his action as a "singular event" that she had never known to occur before.  [Entry #26-2 at 15].   She testified that she thought Plaintiff's conduct was "not appropriate, unprofessional behavior."   *Id.*   Plaintiff contends that prior to making his announcement at the meeting, he shared with Chavis that he intended to make his statement in the event that Preston announced a selection of any other than him and that Chavis was "amenable to that process."  [Entry #26-3 at 50].  Chavis disputes Plaintiff's statement and indicates that had Chavis known of Plaintiff's plan, he would have urged against it.  [Entry #26-17 at 2].

After the meeting, Plaintiff recalled speaking with three of the other meeting attendees individually to inform them that, no matter how the contest came out, he was more than willing to share his application with his section members so that they would not think that he was trying to obtain a job he did not deserve.  [Entry #29-1 at 20–32]. Preston testified that some staff members told her that Plaintiff's actions were making them uncomfortable, and asked her to put a stop to them.  [Entry #26-2 at 17–19; Entry #26-18 at 2–3].

Late that afternoon on July 25, 2011, Preston and Litton met with Plaintiff to counsel him on his behavior during the staff meeting and his subsequent conversations with staff.  [Entry #26-19 at 2].  Plaintiff testified that he agreed not to discuss the matter further with his coworkers at work, but the parties agreed that Plaintiff could discuss the matter with friends and colleagues at lunch and outside work as much as he wished. [Entry #26-3 at 60].  Plaintiff testified that after being counseled on discussing his opposition to Cantrell's promotion at work, he ceased any such discussions.  [Entry #29-1 at 16].  Plaintiff continued to communicate with Chavis regarding his discrimination complaint, and testified that Chavis informed him that they could speak about the matter during work hours.  [Entry #26-3 at 61–62].

After consulting with DHEC's personnel department, Preston testified that she and Litton decided to memorialize the meeting in a supervisory counseling memorandum ("Supervisory Counseling"), which is maintained in the supervisor's file, rather than take an action that would go in his personnel record.  [Entry #26-2 at 19–20].  Litton

explained that he likely asked Preston to prepare the memorandum because "it would be part of [his] practice in a situation even resembling this to suggest that . . . there should be documentation of it." [Entry #26-4 at 6]. Huston explained that DHEC's personnel specialists often advise managers to address their concerns with employees "just to bring an awareness to the employee," to "document it," and keep the record in the "supervisor's file." [Entry #26-7 at 7]. Huston distinguished this type of memorandum from discipline such as a written reprimand, which is kept in the employee's official personnel file. *Id.*

On July 28, 2011, Preston and Litton met with Plaintiff and issued him the Supervisory Counseling. [Entry #26-19 at 2]. A handwritten note on the Supervisory Counseling indicates that Plaintiff was offered the original document, but refused to take it. *Id.*

**Conclusion of the EEO Investigation**

DHEC completed an investigation into Plaintiff's allegations that he was denied the promotion due to race discrimination. [Entry #26-13 at 4–6]. Chavis looked at the interview scores and concluded that the interview questions and weight struck a fair balance between education, experience, and other factors. [Entry #26-13 at 8–9, 11]. Chavis ultimately found that DHEC had adhered to its policies and no further action was necessary. [Entry #26-13 at 6; Entry #26-14 at 2].

Following the conclusion of his internal complaint, Plaintiff submitted his charge of discrimination to SCHAC on September 6, 2011. [Entry #26-5 at 2]. Plaintiff listed the date of discrimination as July 21, 2011. *Id.* Plaintiff asserted that he had been denied

a promotion on July 21, 2011, and that a substantially younger, less experienced, white employee was selected for the position. *Id.* He claimed that he was denied the promotion in retaliation for defiance of his supervisor's unlawful work practices. *Id.* He also claimed that he was presented with a Supervisory Counseling on July 28, 2011, in retaliation for his concerns of unequal treatment. *Id.*

SCHAC issued a dismissal and notice of right to sue on June 7, 2012. [Entry #26-20 at 2]. The EEOC issued a dismissal and notice of rights letter on July 28, 2012. [Entry #26-22]. Plaintiff timely filed this lawsuit on October 15, 2012. [Entry #1]. DHEC now seeks summary judgment on Plaintiff's claims under Title VII. [Entry #26].

II.     Discussion

A.     Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

B.     Analysis

1.     Title VII Discrimination Claim

In Title VII claims, absent direct evidence of discrimination, as is the case here, Plaintiff must prove his allegations under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny.   Under *McDonnell Douglas*, Plaintiff first must establish by a preponderance of evidence each element of his prima facie case of discrimination.   *Id.* at 802.   To state a prima facie case of discriminatory failure to promote under Title VII, Plaintiff must prove: (1) he is a member of a protected group, (2) he applied for the position in question, (3) he was qualified for that position, and (4) the defendant rejected his application under circumstances that give rise to an inference of unlawful discrimination.  *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005).

If Plaintiff establishes a prima facie case, the burden shifts to DHEC to produce a legitimate, nondiscriminatory reason for the decision not to promote.  *Id.*  This is merely a burden of production, not of persuasion.  *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506 (1993).

Once DHEC meets its burden of production by producing a legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non*."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)).  In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason

12

produced by DHEC is not its true reason, but was pretext for discrimination. *Reeves*, 530 U.S. at 143. Throughout the burden-shifting scheme set forth in *McDonnell Douglas*, the ultimate burden of proving that DHEC intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude DHEC intentionally discriminated against him.

DHEC presumes that Plaintiff has stated a prima facie case, but argues that it has stated a legitimate, nondiscriminatory for deciding not to promote Plaintiff and that Plaintiff has failed to establish pretext. [Entry #26-1 at 15]. DHEC's stated reason for hiring Cantrell rather than Plaintiff is that Cantrell received a higher score during the interview process. *Id.* Plaintiff does not dispute that Cantrell receive a higher interview score, but contends that he has amassed sufficient circumstantial to demonstrate that DHEC's stated reason for denying him the promotion is pretextual. [Entry #29 at 17–18].

Plaintiff alleges that he has demonstrated pretext based on the following arguments: (1) he has provided evidence sufficient to show that Plaintiff was objectively more qualified for the open position than Cantrell, and (2) he has provided evidence that Preston historically treated him unfairly and did not follow DHEC policy in selecting a candidate for the open position. [Entry #29 at 18].

With regard to his qualifications for the position, Plaintiff notes that the position required, "at minimum, a master's degree in the natural or physical sciences and five years of environmental experience, or a bachelor's degree in the same, and six years of

environmental experience." *Id.* The position also required, among other skills, the ability to manage and supervise statewide activities. *Id.* Plaintiff asserts he had "far more experience in the environmental field, and at DHEC" than Cantrell. *Id.* He also contends that his eight months of experience in the 303(d), TMDL, and Non-Point Source section and his ten years of experience coordinating a statewide environmental program "made him vastly qualified for the Program Manager I position, objectively more so than Wade Cantrell." *Id.* at 19.

Through his qualifications argument, Plaintiff is asking the court to impermissibly sit as a super personnel department and substitute Plaintiff's opinions regarding his qualifications for the judgment of DHEC. *See Westinghouse Savannah River Co.*, 406 F.3d at 272 (holding it is not appropriate for the court to "sit as a super-personnel department weighing the prudence of employment decisions made by the defendants"); *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (same); *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 377 (4th Cir. 1995) (holding Title VII is not a vehicle for substituting the judgment of a court for that of the employer). The record demonstrates that Cantrell met the minimum education and experience qualifications for the Program Manager I position. He had a master's degree and 13 years of experience at DHEC when he applied for the position at issue. [Entry #26-12 at 4–6]. While Plaintiff may have worked at DHEC for nine years longer than Cantrell, it would be unreasonable to find that Cantrell was inexperienced or that Plaintiff clearly has superior experience given the lengthy periods that both men have worked for DHEC. Likewise, while Plaintiff may

have had eight months of experience in the 303(d), TMDL, and Non-Point Source section, the court does not find such a short time period in the section to give Plaintiff an objective advantage over Cantrell.  Finally, while Plaintiff had experience coordinating a statewide program, the undersigned finds this to be but one of many considerations in the hiring process and insufficient to demonstrate that Plaintiff was objectively more qualified than Cantrell.  *See Westinghouse Savannah River Co.*, 406 F.3d at 270 (holding plaintiff "may not choose the areas in which []he wants to compete . . . for the promotion").  Consequently, the undersigned finds that a comparison of Plaintiff and Cantrell's qualifications is insufficient to establish pretext.  *See Moore v. Mukasey*, 305 Fed. Appx. 111, 116 (4th Cir. 2008) (holding that where the "undisputed facts establish that both Moore and Roberts were at least minimally qualified to serve as SISE Unit Chief," and an interview panel "did not rank Moore as one of the top three candidates for the promotion . . . our case law makes plain that Moore's self-assessment of his superior aptitude for the position fails to rebut the Government's legitimate explanation").

Plaintiff next argues that "Preston's reasons for choosing Cantrell over Plaintiff are without credence" and are evidence of pretext.  [Entry #29 at 20].  In support of this argument, Plaintiff asserts that the selection process was flawed because it was based on subjective scoring by the panelists; applicants' scores were determined almost solely on their interview responses; and Preston implemented a new score sheet for this hiring process that she had not used before.  *Id.* at 21–22.  Plaintiff, however, has offered no evidence to demonstrate that any aspect of the selection process was racially biased or

that any change to the selection process was racially motivated. Instead, Plaintiff points to an "adverse history" with Preston and asks the court to infer that Preston purposely implemented a selection process that would be detrimental to Plaintiff. *Id.* The adverse history Plaintiff references presumably includes his disagreements with Preston over licensing issues, Preston's alleged dismissive attitude toward Plaintiff, and Preston's decision to transfer Plaintiff to the 303(d), TMDL, and Non-Point Source section against his wishes. Other than his own unsubstantiated allegations, Plaintiff has provided no evidence to show that his alleged adverse history with Preston was the result of discriminatory animus. Furthermore, it is not within the court's province to dictate the factors that employers must weigh in making a promotion. *See Hux v. City of Newport News*, 451 F.3d 311, 318 (4th Cir. 2006).

Plaintiff also argues that the selection process did not comply with DHEC's internal policies. [Entry #29 at 22]. Specifically, he contends that the interview panel did not have the required diversity and that Preston did not did not adequately consider DHEC's affirmative action policy as part of the hiring decision. *Id.* Huston testified that she normally recommended that selection panels be diverse such that the panel would not have all white females or all black males. [Entry #29-6 at 2]. She also stated that, depending on the area, the panel would "sometimes" or "usually" be racially diverse. *Id.* Here, the panel consisted of one male and two females and was, therefore, diverse in gender. Plaintiff has failed to identify any African-American employees who might reasonably have been chosen to serve on the selection panel. He has also failed to

16

demonstrate that the composition of the selection panel had any impact on the decision to hire Cantrell.  Furthermore, Plaintiff admitted that he had no evidence that Johnson and Hightower had scored him poorly in the interview because of his race.  [Entry #26-3 at 42].  Consequently, the undersigned is not persuaded by Plaintiff's allegation that the lack of diversity of the selection panel establishes pretext.

The undersigned is likewise unpersuaded by Plaintiff's contention that Preston did not adequately consider DHEC's affirmative action policy as part of the hiring decision. As support for this argument, Plaintiff cites to Huston's testimony that, during the hiring process, it was her practice as the Human Resources Director to respond to questions from the manager in charge of hiring.  [Entry #29-6 at 1].  Her testimony suggests that she did not explicitly advise hiring managers on DHEC's affirmative action policy.  *Id.* Plaintiff also cites to Chavis's testimony that no one related to the hiring process at issue sought guidance from him to ensure that the process was conducted within the affirmative action policy.  [Entry #29-24 at 6].  The testimony Plaintiff cites reflects only that Huston and Chavis did not explicitly discuss DHEC's affirmative action policy with Preston or the interview panel.  The testimony does not indicate that Preston deliberately ignored the policy or that the panel's hiring decision was motivated by discriminatory animus.  Therefore, the undersigned concludes that Plaintiff's argument is insufficient to establish pretext.

Because Plaintiff has failed to demonstrate that any actions in this matter were racially motivated, the undersigned recommends that summary judgment be granted to

DHEC on Plaintiff's failure-to-promote claim.

## 2. Title VII Retaliation Claim

Plaintiff also asserts a Title VII retaliation claim against DHEC.  Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e–3(a).

Retaliation cases under Title VII proceed according to the three-step burden shifting process articulated in *McDonnell Douglas*.  First, Plaintiff must make a prima facie case of retaliation by producing evidence that (1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal link between the protected activity and the adverse action.  *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006).  Once Plaintiff establishes the elements of his prima facie case, the burden shifts to DHEC to proffer evidence of a legitimate, non-discriminatory reason for taking the adverse employment action.  *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  At that point, Plaintiff has the opportunity to prove that DHEC's legitimate, non-retaliatory reason is pretextual.  *See Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 271 (4th Cir. 2001).

DHEC argues that Plaintiff cannot demonstrate that he suffered an adverse employment action and cannot show that DHEC's legitimate, nondiscriminatory reason

for its action is pretextual.  [Entry #26-1 at 20].

a.    Plaintiff Has Failed to State a Prima Facie Case

The parties dispute whether Plaintiff has stated a prima facie case of retaliation because they disagree on whether the Supervisory Counseling that Plaintiff complains of was an adverse employment action under Title VII.  To show an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). "A typical adverse employment action includes discharge, demotion, decrease in compensation, loss of job title or supervisory responsibility, reduced opportunities for promotion, or other conduct that had a significant detrimental effect."  *Gurganus v. Beneficial N.C., Inc* ., 25 Fed. Appx. 110, 112 (4th Cir. 2001) (citing *Boone v. Goldin*, 178 F.3d 253, 255–56 (4th Cir. 1999)).  An adverse employment action often has an economic effect; however, that is not a requirement.  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Plaintiff concedes that the Supervisory Counseling is written documentation of counseling on an employment issue that is maintained in a file by Plaintiff's supervisor rather than being placed in his personnel file.  [Entry #29 at 25].  Plaintiff argues, however, that, the Supervisory Counseling could eventually be put in his personnel file, could likely be obtained through a request under the Freedom of Information Act, and

could potentially harm or impact future employment decisions. *Id.* For these reasons, he contends that the Supervisory Counseling could dissuade a reasonable worker from making or supporting a charge of discrimination and, therefore, asserts that a question of fact exists as to whether it constitutes an adverse employment action. *Id.* at 25–26.

Plaintiff's argument suggests that if the Supervisory Counseling remained in his supervisor's file, as he agrees is the usual course, then it would not constitute an adverse employment action. However, Plaintiff speculates about the negative future implications of the Supervisory Counseling and, on that basis, contends the Supervisory Counseling qualifies as an adverse employment action. In support of his argument that the Supervisory Counseling could eventually make it into his personnel file, he cites to Huston's testimony. Huston testified that the Supervisory Counseling would only be put into the official personnel file if the situation that was the subject of the counseling escalated. [Entry #29-6 at 4–5]. Thus, the record demonstrates that, without an escalation of the problem at issue, the Supervisory Counseling would exist only in the supervisor's file. Plaintiff's contentions that the Supervisory Counseling could be the subject of a FOIA request or could negatively impact future employment decisions are speculative and unsupported by the record. For these reasons, the undersigned recommends a finding that the Supervisory Counseling would not have deterred a reasonable employee from challenging discriminatory action and does not constitute an adverse employment action. The undersigned further recommends a finding that Plaintiff has failed to state a prima facie case of Title VII retaliation.

20

b.     Defendant Has Provided a Legitimate, Nondiscriminatory
Reason

Even if Plaintiff has were to establish a prima facie case of retaliation, DHEC has

stated a legitimate, nondiscriminatory reason for the action.  DHEC asserts that it issued

the Supervisory Counseling to Plaintiff for disrupting the meeting in which Preston

announced Cantrell's selection for the open position and for "his unwelcomed attempt to

justify his outburst to his co-workers, which in turn caused them to complain to Preston."

[Entry #26-1 at 20].  The burden, therefore, shifts back to Plaintiff to establish pretext.

c.     Plaintiff Has Failed to Demonstrate Pretext

Plaintiff attempts to establish pretext by contesting the facts preceding the

issuance of the Supervisory Counseling.  He states that he did not interrupt Preston

during the announcement meeting, but rather waited until she had finished making her

announcement to make his.  [Entry #29 at 26].  He disputes Preston's assertion that he

told a fellow employee that she "needed" to stay for his announcement and argues instead

that he "urged" the employee the stay and told her that "she *should* stay so that she would

understand that if Plaintiff got the position, he was not going after something he did not

deserve."  *Id.* at 26–27 (emphasis in original).  Plaintiff contends that although the

Supervisory Counseling provided that he went to his coworkers' offices "to tell them

about why [he] was the most qualified and why [he] deserved the position," he actually

just "offered his coworkers the option of reviewing his application and supporting

documents should they feel that his seeking out this promotion was unwarranted."  *Id.* at

27.

Despite Plaintiff's attempts to draw meaningful distinctions between DHEC's stated reason for the Supervisory Counseling and his version of the events preceding its issuance, there are none.  Plaintiff admits that he announced during the meeting that he disagreed with the hiring decision and intended to contest it with the EEOC office. [Entry #26-3 at 51–52].  He admits that Twanda Wilson asked if she had "to stay and hear this," and he told her that he felt it was important for her to hear his announcement. *Id.* at 54.  He also admits that after the meeting, he continued to discuss his announcement with some of his coworkers and that "it was more of a one-way discussion." *Id.* at 56.

The facts as admitted by Plaintiff support the legitimate, nondiscriminatory reason offered by DHEC for issuing the Supervisory Counseling. Consequently, the undersigned recommends a finding that even if Plaintiff can state a prima facie case of retaliation, he has failed to demonstrate pretext as required under *McDonnell Douglas*.  The undersigned recommends that DHEC's motion for summary judgment be granted as to Plaintiff's retaliation claim.

### 3.    Title VII Hostile Work Environment Claim

Plaintiff's final claim asserts that he was subjected to a hostile work environment based on race.[2]  DHEC contends that Plaintiff's hostile work environment claim must be dismissed because (1) he did not assert it in his charge of discrimination, (2) most of the events about which Plaintiff complains occurred more than 300 days prior to Plaintiff's

filing of his EEOC claim, and (3) he has failed to demonstrate that the alleged harassment was sufficiently severe and pervasive to alter the conditions of employment. [Entry #30 at 2–10]. Plaintiff has not responded to DHEC's arguments.[3]

A plaintiff's administrative claim "defines the scope of [his] subsequent right to institute a civil suit." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "If a plaintiff's claims in [his] judicial complaint are reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in [his] subsequent suit." *Id.* at 247–48. Without exhausting administrative remedies in a Title VII claim, this court is deprived of subject matter jurisdiction. *Id.* at 300–01.

Here, Plaintiff's charge of discrimination is limited solely to his denial of the promotion on July 21, 2011. [Entry #26-5 at 2]. The charge includes no mention of an allegedly hostile work environment or any of the events which Plaintiff appears to allege in support of such a claim. Thus, he has not administratively exhausted his hostile work environment claim and the undersigned recommends the claim be dismissed for lack of subject matter jurisdiction.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends DHEC's motion for

---

[2] Although DHEC's motion for summary judgment characterized Plaintiff's third claim as a "pattern and practice of discrimination" claim, Plaintiff clarified in his response brief that he intended to assert a hostile work environment claim. [Entry #29 at 28].

[3] The undersigned recognizes that DHEC raised these arguments in its reply brief; however, Plaintiff could have sought court permission to file a surreply brief if he wanted to present a substantive responsive argument.

summary judgment [Entry #26] be granted.

   IT IS SO RECOMMENDED.

March 28, 2014                          Shiva V. Hodges
Columbia, South Carolina               United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).