IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Harvey S. Daniel, | ) | C/A No. 3:12-2981-CMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| South Carolina Department of Health | ) | |
| and Environmental Control, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Through this action, Plaintiff Harvey S. Daniel ("Daniel") seeks recovery from his employer, South Carolina Department of Health and Environmental Control ("DHEC"), for alleged discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Specifically, Daniel alleges that DHEC (1) engaged in race-based discrimination when it failed to promote him to a Program Manager I position, (2) retaliated against him after he indicated he would challenge the failure to promote through DHEC's Equal Employment Opportunity ("EEO") office, and (3) engaged in a pattern and practice of discrimination or allowed a racially hostile work environment to exist or both.[1]

The matter is before the court on DHEC's motion for summary judgment. ECF No. 26. For reasons set forth below, DHEC's motion for summary judgment is granted.

---

[1] Daniel's complaint does not assert separate causes of action. It does, however, include allegations which suggest four potentially distinct violations of Title VII. These allegations are summarized as follows: "In addition to Defendant's treatment of Plaintiff by denying him promotional opportunities and counseling him and reprimanding him for exercising his rights, and Defendant's pattern and practice of discriminating against minorities, Plaintiff has been subjected to a racially hostile work environment." Compl. at ¶ 14, ECF No. 1. For ease of reference, the court refers to these allegations in the remainder of this order as asserting separate claims.

**PROCEDURAL BACKGROUND**

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings and a Report and Recommendation ("Report"). On March 28, 2014, the Magistrate Judge issued a Report recommending that DHEC's motion for summary judgment be granted as to all claims. Report, ECF No. 32. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so.

Daniel filed a timely objection on May 13, 2014, arguing that summary judgment should be denied as to his claims for discriminatory failure to promote and retaliation. ECF No. 35. Daniel did not object to the recommendation that summary judgment be granted as to his claim(s) for pattern and practice of discrimination and hostile work environment. DHEC responded on May 14, 2014, arguing that the court should adopt the Report in full and grant summary judgment on all claims. ECF No. 36.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court

need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

## DISCUSSION

### I.     Discriminatory Non-Selection for Promotion

**Report.**  The Report assumes without deciding that Daniel has stated a prima facie case in support of his claim that DHEC engaged in race-based discrimination when it selected Wade Cantrell ("Cantrell") rather than Daniel for promotion to the Program Manager I position.  ECF No. 32 at 13.  The Report, nonetheless, recommends summary judgment be granted because Daniel failed to raise a genuine issue of material fact as to DHEC's proffered legitimate, non-discriminatory reason for the selection of Cantrell over Daniel.  *Id.* at 13-18.

As explained in the Report, Daniel was one of twelve applicants selected for an interview. Report at 4-5.  The interviews were conducted by a panel of three Caucasian supervisory employees: Heather Preston (Daniel's supervisor); Anne Marie Johnson, and Chuck Hightower.  *Id.*  Each panel member independently scored these twelve applicants based on criteria including the applicants' answers to predetermined interview questions.  *Id.*  Before the interviews, the questions were reviewed, edited and approved by DHEC's human resources director.  *Id.*

Daniel's overall ranking based on these scores was seventh out of twelve.  Johnson gave him the lowest ranking (tenth), Hightower the highest (sixth), and Preston a score in between (eighth). *Id.*  None of the interviewers ranked Daniel in the top three, and only the top three (all of whom were Caucasian) were invited back for a second interview.  *Id.*  Cantrell was ultimately selected for the Program Manager I position from among these top three applicants.  *Id.*

**Objection.** Daniel argues that the Report improperly "disregarded evidence" that favored a finding of pretext. ECF No. 35 at 3. With limited exceptions, Daniel's challenge is to the Report's *treatment* of the facts rather than any misstatement or omission of relevant evidence.

For example, Daniel concedes that the Report acknowledges that he had more years of experience with DHEC than the person selected for promotion, including eight months in the specific department in which the Program Manager I position was available. *Id.*[2] Daniel suggests that this evidence, coupled with evidence that he did "very good work" in the specific department, is sufficient to show that he was objectively more qualified for the position than the person selected.[3]

Daniel also challenges the Report's conclusion that there was an absence of evidence that Johnson and Hightower "scored [Daniel] poorly in the interview because of his race." *Id.* at 4. Daniel suggests such evidence exists because Johnson and Hightower were subordinates of Preston, who served as the third member of the panel and as to whom Daniel has proffered evidence of animus. *Id.* n.1.[4] Daniel implies that Hightower and Johnson were or could have been influenced

---

[2] As noted in the Report, Cantrell had a masters degree and thirteen years of experience at DHEC. Report at 14. Daniel also had a masters degree, but a total of twenty-four years of experience.

[3] The Report quotes Preston's testimony that Daniel generally "did very meticulous work and very good work" in her *division*. Report at 3. Daniel, therefore, appears to be making a distinction between Preston's view of his work in the larger division (addressed in the Report) and his work in the *specific department* in which the Program Manager I position was available (arguably not specifically addressed, though the Report does not purport to rely on any such distinction).

[4] As the Report notes, Daniel testified that he believed Preston viewed him negatively and treated him adversely because of several complaints Daniel had previously made to Preston regarding what he viewed as her unethical work practices. Report at 3, 6, ECF No. 32. This source of animus (which falls outside the protections of Title VII) is also referenced in Daniel's complaint to the South Carolina Human Affairs Commission ("SCHAC"). *Id.* at 6-7. For purposes of this order, the court presumes that Daniel has proffered evidence of race-based animus on Preston's part. The court further notes that Daniel need not proffer direct evidence of racial animus given his reliance on the burden shifting framework derived from *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973).

4

by Preston's animus towards Daniel because "sometimes you strive to please your boss." *Id.* (quoting his own deposition testimony). In his final argument as to record evidence, Daniel contends that the Report "ignored circumstantial evidence of discrimination" when it "discounted the fact that neither Preston nor the interview panel discussed DHEC's affirmative action policy." *Id.* at 5.

Ultimately, Daniel argues that he has raised a genuine issue of material fact whether he was objectively more qualified for the position than Cantrell because Daniel had (1) nine more years of experience with DHEC than Cantrell, (2) eight months of experience in the specific section in which the position was open, (3) a supervisor's determination that his work in this section was "very good," and (4) relevant experience coordinating state-wide activities. Daniel further argues that raising a genuine issue of material fact as to whether he was objectively more qualified for the position, in turn, presents a genuine issue of material fact whether DHEC's proffered legitimate basis for selecting Cantrell (*i.e.*, Cantrell's substantially higher ranking by the panel) was pretextual, thus allowing an inference of race-based discrimination. Finally, Daniel argues that evidence of the composition of the interview panel as inconsistent with DHEC's affirmative action policy (which encourages diverse panels) and the fact panel members did not discuss the affirmative action policy with the human resources officer or EEO office are evidence that the reasons given for the hiring were pretextual.

**Discussion.** Daniel's first argument fails because it rests on a presumption that it is for the finder of fact, rather than the employer, to decide which qualifications are most important. As explained in the Report, this approach would impermissibly place the court in the role of super personnel department. Report at 14 (discussing, *e.g.*, *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005).

As noted in the Report, DHEC selected twelve applicants to interview for the Program Manager I position. The interviews were conducted using a number of predetermined questions approved by DHEC's human resources department. The applicants were scored independently by three panel members based, in part, on their answers to interview questions. Daniel received an overall ranking of seventh out of twelve. His highest ranking by any panel member was sixth. Only the top three applicants were given second interviews and Cantrell was selected for the Program Manager I position from the top three applicants.

Daniel has proffered no evidence that the questions themselves were improper or based on impermissible criteria. Daniel has, likewise, presented no evidence that the panel members' scoring was based on anything other than their honest and unbiased evaluation of all candidates' qualifications and interview responses. At most, Daniel suggests a basis on which one could speculate that (1) Preston was biased against him; (2) that bias may have been due, at least in part, to Daniel's race, and (3) the other two panel members could have been influenced by Preston's bias.[5] This is too speculative a basis to raise a genuine issue of material fact as to pretext.

Daniel's arguments relating to the composition of the panel and its failure to consider DHEC's affirmative action policy also fail to raise a genuine issue of material fact as to pretext. As to these arguments, the court adopts the Report without further discussion. *See* Report at 16 (noting, *inter alia*, that Daniel had not identified any African-American employee who might reasonably have

---

[5] For purposes of this order, the court assumes not only that Preston was biased against Daniel, but that the bias had some racial component. As explained above, however, Daniel's primary evidence of bias relates to complaints he made to or about Preston regarding the legality of certain of her decisions and directives. Bias based on such complaints (which were unrelated to any Title VII protected class) would not be actionable under Title VII.

been selected to serve on the panel and had proffered no evidence that the racial composition of the panel influenced the decision to hire Cantrell).

**II.     Retaliation**

**Report.** The Report recommends that summary judgment be granted on Daniel's retaliation claim for two reasons. First, it "recommends a finding that the Supervisory Counseling would not have deterred a reasonable employee from challenging discriminatory action and does not constitute an adverse employment action." Report at 20 (noting the prima facie case fails absent proof of an adverse action).[6] Second, the Report notes that DHEC has proffered a legitimate, non-discriminatory reason for the discipline (Daniel's behavior on July 25, 2011), which Daniel has failed to demonstrate was pretextual. *Id.* at 21-22. The Report further notes that, despite somewhat different characterizations of Daniel's behavior at and after the July 25, 2011 meeting, the central facts are the same: Daniel announced his disagreement with and intent to contest the promotion decision at a meeting with a number of his co-workers, which had been called to announce the successful candidate. Daniel also subsequently approached a number of his co-workers to address his pursuit of the position in what he described as "one-way discussion[s]."

**Objection.** As to the first point, Daniel argues that the Supervisory Counseling was sufficiently adverse because it is within DHEC's progressive discipline policy and "could eventually become incorporated into [his] personnel file." ECF No. 35 at 6. Daniel argues that this could have

---

[6] Daniel's retaliation claim is founded on a Supervisory Counseling he was given on the afternoon of July 25, 2011, and a related Supervisory Counseling Memorandum ("Counseling Memorandum"), which was made available to him on July 28, 2011. Report at 9-10. The Counseling Memorandum was kept by his supervisor but was not placed in Daniel's personnel file. *Id.* While a Supervisory Counseling or Counseling Memorandum may be a first step to further discipline, Daniel has not pointed to any evidence of further discipline or other adverse action subsequently taken against him. *See id.*

a sufficient "chilling effect" to meet the relevant standard: that the action be "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 5 (quoting *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Daniel also notes that, although he continued to communicate with DHEC's EEO office following the Supervisory Counseling, he "felt concerns" about doing so and "attempted to ameliorate the counseling by submitting responsive emails to Heather Preston in efforts to diminish the impact of the employment action." *Id.* at 7.

Regarding pretext, Daniel points to various differences between his characterization of his behavior at and after the July 25, 2011 meeting and DHEC's (and Preston's) characterization of the same events. Daniel argues that a fact finder who accepted his version of events could infer from the differences that his supervisor had not only overstated the inappropriateness of his behavior at and after the meeting but was, in fact, acting in retaliation for his stated intent to challenge his non-promotion (presumably on grounds protected under Title VII).

**Discussion.** The court is not persuaded by Daniel's arguments on either point. While the Supervisory Counseling and Counseling Memorandum constitute a step in DHEC's progressive discipline scheme, they are but a first and minor step. Beyond the discomfort inherent in receiving corrective counseling, there is no other adverse consequence that necessarily follows. No documentation is placed in the employee's file unless and until something happens warranting further correction. In Daniel's case, nothing further has happened.

Under these circumstances, the court agrees with the Report that the evidence is insufficient to support a finding that the Supervisory Counseling and Counseling Memorandum were "harmful to the point that [they] could well dissuade a reasonable worker from making or supporting a charge

of discrimination." *Id.* at 5 (quoting *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

**Pretext**. The court also finds the evidence insufficient to establish pretext as to the proffered legitimate reason for the Supervisory Counseling and related Counseling Memorandum. Daniel relies on distinctions between his description of his behavior during and following the July 25, 2011 meeting and Preston's description of events. He does not, however, point to any evidence that the counseling was directed to or motivated by any other events. At best, the evidence cited by Daniel suggests Preston may have overstated the degree to which Daniel's actions in and after the July 25, 2011 meeting were disruptive. This evidence would not, however, support a finding that the counseling was motivated by or directed to any other behavior, most critically Daniel's decision to challenge his non-selection through a complaint to DHEC's EEO office. Further, by his own testimony, Daniel not only continued to pursue his challenge to the promotion decision through the EEO office but also continued to discuss the situation with coworkers (albeit after work or during lunch rather than during the normal work day), without further criticism or disciplinary action. Under these circumstances and for reasons explained in the Report, the evidence is insufficient to raise a genuine issue of material fact whether DHEC's stated reason for the Supervisory Counseling and Counseling Memorandum was pretextual.

**III.     Hostile Environment or Pattern and Practice Claim**

Daniel has not objected to the recommendation that summary judgment be granted on any claim for hostile environment or pattern and practice of discrimination that might be alleged in his complaint. The court, therefore, reviews this recommendation for clear error. Finding none, the

court adopts the Report and grants summary judgment to the extent any such claim is advanced in the complaint.

## CONCLUSION

For the reasons set forth above, the court adopts the Report and Recommendation and grants summary judgment to DHEC as to any and all claims asserted in Daniel's complaint.

IT IS SO ORDERED.

s/ Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
Senior United States District Judge

Columbia, South Carolina
June 11, 2014